# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| VERMEER MANUFACTURING COMPANY | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  3:24-cv-699 |
| | ) | The Honorable Aleta A. Trauger |
| vs. | ) | |
| | ) | **JURY DEMAND** |
| AEROCINE VENTURES INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S BRIEF IN RESPONSE TO
## <u>DEFENDANT'S MOTION TO DISMISS</u>

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

ARGUMENT ....................................................................................................... 4

    I.    AeroCine has Submitted to Personal Jurisdiction in this District ................... 4

        A.    AeroCine waived any challenge to personal jurisdiction by entering a general appearance in this action. .................................. 5

        B.    AeroCine's conduct in this district is sufficient to establish personal jurisdiction. ........................................................................... 6

               1.    AeroCine has purposefully availed itself of this Court's jurisdiction. ................................................................ 7

               2.    Vermeer's claims arise from AeroCine's contacts with Tennessee. .............................................................. 10

               3.    Exercising jurisdiction over AeroCine is not unreasonable. .................................................................. 10

               4.    Dismissal is not the appropriate remedy here. ....................... 12

    II.    Vermeer's Complaint Exceeds Applicable Pleading Requirements. ........................................................................................ 13

        A.    The extreme remedy of dismissal is not warranted in this case ............................................................................................ 13

        B.    Vermeer's Complaint adequately alleges infringement .................... 14

               1.    The parties' goods and services are legally related. .............. 14

               2.    The remaining factors weigh in Vermeer's favor. ................. 18

        C.    Vermeer is inarguably the senior user with the priority necessary to bring an infringement claim. ......................................... 21

CONCLUSION ................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**                                                         **Page(s)**

*Allard Enters., Inc. v. Advanced Programming Res., Inc.*,
249 F.3d 564 (6th Cir. 2001) ................................................................ 21

*Ameritech, Inc. v. Am. Info. Techs. Corp.*,
811 F.2d 960 (6th Cir. 1987) ................................................................ 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................. 13

*AWGI, LLC v. Atlas Trucking Co., LLC*,
998 F.3d 258 (6th Cir. 2021) ........................................................ 15, 16

*Bates v. CogniSens Athletics, Inc.*,
No. 3:18-CV-00467, 2018 WL 3572382 (M.D. Tenn. July 24, 2018) (Trauger, J.) ........ 7, 9, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................. 13

*Bliss Collection, LLC v. Latham Companies, LLC*,
82 F.4th 499 (6th Cir. 2023) ................................................. 13, 14, 19, 20

*Cartwright v. Est. of Peterson*,
No. 3:17-CV-01464, 2018 WL 4945232 (M.D. Tenn. July 2, 2018) (Trauger, J.) ................... 6

*Coleman v. Chen*,
712 F. Supp. 117 (S.D. Ohio 1988) ...................................................... 10

*Elvis Presley Enters., Inc. v. Capece*,
141 F.3d 188 (5th Cir. 1998) ................................................................ 17

*CJ Advert., LLC v. Whitehardt, Inc.*,
No. 3:10-0214, 2010 WL 3260068 (M.D. Tenn. Aug. 18, 2010) (Trauger, J.) ....................... 10

*CompuServe, Inc. v. Patterson*,
89 F.3d 1257 (6th Cir. 1996) .................................................................. 5

*Concord Music Grp., Inc. v. Anthropic PBC*,
No. 3:23-CV-01092, 2024 WL 3101098 (M.D. Tenn. June 24, 2024) ................... 12

*Daycab Co., Inc. v. Prairie Tech., LLC*,
No. 3:20-CV-63, 2021 WL 6276198 (E.D. Tenn. Oct. 5, 2021) ........................... 7, 9

*Dorn v. Dominique*,
No. 22-5620, 2023 WL 2543714 (6th Cir. Mar. 14, 2023)....................................... 4, 5

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
592 U.S. 351 (2021) ................................................................................................ 7, 9

*Gerber v. Riordan*,
649 F.3d 514 (6th Cir. 2011) ................................................................................... 5, 6

*Hammons v. Lasik Vision Inst., LLC*,
No. 04-2243-B, 2006 WL 2583162 (W.D. Tenn. Sept. 6, 2006) ............................. 10

*Kaldy v. Urshow.tv, Inc.*,
No. 2:16-CV-54, 2017 WL 104148 (E.D. Tenn. Jan. 10, 2017) .............................. 14

*Kerns v. Caterpillar, Inc.*,
583 F. Supp. 2d 885 (M.D. Tenn. 2008) (Trauger, J.)............................................. 6

*M & C Corp. v. Erwin Behr GmbH & Co., KG*,
508 F. App'x 498 (6th Cir. 2012) .......................................................................... 5, 6

*Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*,
679 F.3d 410 (6th Cir. 2012) ............................................................................... 15, 18

*Maxberry v. Univ. of Ky. Med. Ctr.*,
39 F. Supp. 3d 872 (E.D. Ky. 2014) ........................................................................ 17

*Microsoft Corp. v. Sellers*,
411 F. Supp. 2d 913 (E.D. Tenn. 2006) .................................................................. 14

*Mobil Oil Corp. v. Pegasus Petrol. Corp.*,
818 F.2d 254 (2d Cir. 1987)..................................................................................... 17

*Moran v. Edie Parker, LLC*,
563 F. Supp. 3d 671 (E.D. Mich. 2021) .................................................................. 17

*Music City Coach, Inc. v. Star City Coach Works, LTD.*,
No. 1:10-CV-00115, 2010 WL 1408272 (M.D. Tenn. Apr. 2, 2010) (Trauger, J.)................... 5

*Music City Metals Co., Inc. v. Jingchang Cai*,
No. 3:17-cv-766, 2017 WL 4641866 (M.D. Tenn. Oct. 17, 2017) (Trauger, J.).......... 4, 5, 6, 12

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*,
704 F. Supp. 2d 305 (S.D.N.Y. 2010)...................................................................... 17

i

*Neogen Corp. v. Neo Gen Screening, Inc.*,
    282 F.3d 883 (6th Cir. 2002) ............................................................................. 8, 9

*Pearl Recs., Inc. v. Conner*,
    No. 3:22-CV-00096, 2023 WL 351203 (M.D. Tenn. Jan. 20, 2023) ...................................... 12

*Scott v. White*, 539 F. Supp. 3d 831 (M.D. Tenn. 2021)...................................... 7, 10, 11

*Shaun Jackson Design, Inc. v. Mohawk USA LLC*,
    No. 15-12005, 2015 WL 9478029 (E.D. Mich. Dec. 29, 2015) ........................................ 7, 8, 9

*Vogue Co. v. Thompson-Hudson Co.*,
    300 F. 509 (6th Cir. 1924) ................................................................................. 17

*Wilfong v. Starstruck Ent., LLC*,
    No. 3:23-CV-00044, 2024 WL 1421255 (M.D. Tenn. Apr. 2, 2024) (Trauger, J.) .................. 21

## Other Authorities

15 U.S.C. § 1125(a) ............................................................................................ 14

28 U.S.C. §§ 1404(a) .......................................................................................... 12

28 U.S.C. §§ 1406(a) .......................................................................................... 12

28 U.S.C. §§ 1631 ............................................................................................... 12

3 McCarthy on Trademarks and Unfair Competition (5th ed. May 2024 update)....................... 16

## Rules

Federal Rule of Civil Procedure 12(b)(2) ..................................................... 4, 6, 13, 22

Federal Rule of Civil Procedure 12(b)(6) ..................................................... 2, 13, 23

# INTRODUCTION

Defendant AeroCine Ventures Inc.'s ("AeroCine") Motion to Dismiss (ECF No. 15) fails to state a single valid basis for dismissal and should be denied. Plaintiff Vermeer Manufacturing Company ("Vermeer") is the owner of numerous federal trademark registrations and common-law rights in its famous VERMEER mark and stylized V logo. AeroCine has been willfully infringing Vermeer's trademarks by offering drone software products under the mark VERMEER in a nearly identical font, accompanied by a nearly identical stylized V logo. Like Vermeer, AeroCine markets its products online and at trade shows across the country, including in this District. In a transparent attempt to escape liability for its willful infringement, AeroCine's Memorandum of Law (ECF No. 15-1, hereinafter "Motion") argues not that Vermeer's allegations are false, but that its claims would have been better brought in a different federal district. AeroCine then turns the applicable pleading standard on its head by insisting that Vermeer must put forth evidence of its claims at the pleadings stage. AeroCine further ignores binding Sixth Circuit precedent to argue that the parties' virtually identical goods and services are not sufficiently related to constitute infringement. In making this baseless argument, AeroCine contradicts a 2022 cease-and-desist letter that AeroCine sent to Vermeer, in which AeroCine asserted that the parties' marks and uses were so similar that AeroCine accused *Vermeer*—the senior user by over seven decades—of infringing AeroCine's trademarks.

AeroCine's Motion should be denied for at least four reasons: ***First***, AeroCine waived any challenge to personal jurisdiction when its counsel entered a general appearance in this action. ***Second***, exercising personal jurisdiction over AeroCine is reasonable here because Vermeer's claims arise from acts of infringement that AeroCine committed in this district, including by selling products to Tennessee customers and marketing its products under the infringing marks at a trade

show in Nashville. ***Third***, AeroCine's insistence that Vermeer has not submitted sufficient "evidence" to support its claims is not a valid basis for dismissal under Rule 12(b)(6). ***Fourth***, Vermeer's Complaint contains ample factual allegations to support its trademark infringement and unfair competition claims.

## FACTUAL BACKGROUND

This is a classic case of willful trademark infringement. For nearly eighty years, Plaintiff Vermeer has built a global business offering innovative machinery and related goods and services—including software to operate its machinery—under its valuable VERMEER trademarks. Compl. ¶¶ 2, 14–25, ECF No. 1. Defendant AeroCine offers software for piloting drones, which are increasingly used in the industries served by Vermeer. *See id.* ¶¶ 33, 39–40. When AeroCine first began developing its software, AeroCine was operating under the name "Aerobo." *See id.* ¶¶ 35–36 ("The software is being developed by the Aerobo team . . . ."). In 2018, AeroCine adopted the mark VERMEER as the name of its "augmented reality camera flight tool," which was then in its beta-testing phase, and eventually filed a trademark application for VERMEER in standard characters, claiming a commercial first-use date of May 2019. *Id.* ¶¶ 34, 38; *see also* Compl. Ex. B, ECF No. 1-3.

AeroCine has been well aware of Vermeer's senior rights in the VERMEER mark since at least 2018, when it filed its trademark application. *See* Compl. ¶ 51. At the time of its application, AeroCine was using the mark in commerce in an angular font next to a rippling V logo:



**AeroCine's Use in Commerce (2018-2019)**

*Id.* ¶ 38. In the years since, AeroCine has apparently grown its business from a beta-phase cell-phone app to a full-fledged line of drone software products, which it creates in partnership with drone manufacturers. *Id.* ¶ 39. AeroCine has also changed the appearance of its VERMEER mark and stylized V logo to appear all but identical to Vermeer's marks, thereby ensuring that it can more effectively trade on Vermeer's goodwill (*id.* ¶¶ 52–53):

| **AeroCine's Present Use in Commerce** | **Vermeer's Senior Use in Commerce** |
|---|---|
|  | |

AeroCine's use of Vermeer's marks and goodwill seems to have been effective. According to AeroCine's website (www.getvermeer.com) and social media pages, AeroCine has used its infringing marks at conferences and trade shows across the country—including in Nashville, Tennessee—to market its products to military contractors and entertainment companies, who seem to believe that they are dealing with the actual Vermeer. *See, e.g.*, Compl. ¶¶ 43–44. For example, only a few months ago, Vermeer received a letter from the Air & Space Forces Association regarding AeroCine's failure to make payments associated with its contract to attend the Association's upcoming trade show, even though the contract supplied AeroCine's business address and contact information. *Id.* ¶¶ 45–46.

Apparently realizing that Vermeer would have a valid trademark claim once it learned of AeroCine's infringing use, AeroCine's CEO sent Vermeer's intellectual property counsel an unsolicited message in July 2022 to "see if there was a way to amicably resolve" any issues arising from the parties' identical marks. Compl. ¶ 54. To be clear:  there was no existing dispute at the time of AeroCine's unsolicited message because Vermeer had not yet learned of AeroCine's

unauthorized use of the mark. Nonetheless, three weeks later—while Vermeer was investigating AeroCine's unauthorized use of its marks—AeroCine's trademark counsel sent *Vermeer* a letter demanding that Vermeer immediately cease all use of its VERMEER marks and cancel its existing software-related registrations and applications. *Id.* ¶ 55.

Shortly after receiving that letter, Vermeer filed a petition to cancel AeroCine's trademark registration before the USPTO's Trademark Trial and Appeal Board. *Id.* ¶¶ 56–57. Rather than surrendering its registration and ceasing its infringing use, however, AeroCine has persisted. To protect its valuable marks from further tarnishment and consumer confusion, Vermeer filed this action. Once AeroCine was served with the Complaint, AeroCine's counsel moved for admission to the Middle District of Tennessee and entered a general appearance. ECF No. 12. On July 29, AeroCine filed a motion to dismiss. For the reasons stated below, that motion should be denied.

## ARGUMENT

## I.     AeroCine has Submitted to Personal Jurisdiction in this District.

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2), the Court may choose one of three paths: "It may (1) rule on the motion on the basis of the affidavits and materials submitted by the parties, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion." *Music City Metals Co., Inc. v. Jingchang Cai*, No. 3:17-cv-766, 2017 WL 4641866, at *2–3 (M.D. Tenn. Oct. 17, 2017) (Trauger, J.). Under any of the three paths, the Court analyzes personal jurisdiction under a burden-shifting analysis. "First, the plaintiff must establish a prima facie case for personal jurisdiction, which can be done merely through the complaint." *Dorn v. Dominique*, No. 22-5620, 2023 WL 2543714, at *4 (6th Cir. Mar. 14, 2023) (quotations omitted). "The burden then shifts to the defendant to file a motion to dismiss ***and support it with evidence***." *Id.* (emphasis added). If the defendant has met this standard, the burden shifts back to the plaintiff to "set forth specific facts showing that the court has

4

jurisdiction." *Id.* (quotations omitted). Where, as here, the defendant fails to support its motion with any affidavits or other evidence, the Court merely determines whether the party asserting jurisdiction has made its prima facie showing. *Id.* In doing so, the Court is to construe the facts presented "in the light most favorable to the plaintiff and ignore the defendant's controverting assertions." *Id.*; *see also Music City Coach, Inc. v. Star City Coach Works, LTD.*, No. 1:10-CV-00115, 2010 WL 1408272, at *6 (M.D. Tenn. Apr. 2, 2010) (Trauger, J.). This approach "prevent[s] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Dorn*, 2023 WL 2543714, at *4 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)).

### A. AeroCine waived any challenge to personal jurisdiction by entering a general appearance in this action.

The Court need not reach the burden-shifting analysis in this case because AeroCine waived any challenge to personal jurisdiction when its counsel entered a general appearance. "Because the requirement of personal jurisdiction flows from the Due Process Clause and protects an individual liberty interest, a person who would otherwise be outside the court's reach may submit to jurisdiction by virtue of making an appearance before the court without reserving its right to a jurisdictional challenge." *Music City Metals Co.*, 2017 WL 4641866, at *4 (Trauger, J.). The Sixth Circuit has held that "[u]nder Federal Rule of Civil Procedure 12(h), a party waives the right to contest personal jurisdiction by failing to raise the issue when making a responsive pleading or a general appearance." *Gerber v. Riordan*, 649 F.3d 514, 520 (6th Cir. 2011) (cleaned up); *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 508 F. App'x 498, 501–02 (6th Cir. 2012) (describing the *Gerber* opinion as "requiring courts in the Sixth Circuit to exercise personal jurisdiction whenever a defendant's attorney enters a general appearance").

AeroCine forfeited its personal-jurisdiction challenge when its counsel entered a general appearance on July 2. ECF No. 12. This is especially true in light of "all the relevant circumstances," indicating that AeroCine intends to "defend the suit on the merits" rather than stand on its jurisdictional defense. *Music City Metals Co.*, 2017 WL 4641866, at *4. For example, though AeroCine's counsel is a member of the Tennessee bar, he was not a member of the Middle District of Tennessee until—rather than appearing *pro hac vice*—he applied for admission to this District to defend AeroCine in this case. *See* Exhibit A.[1] After fulfilling his admission requirements, which included engaging multiple sponsors in this District, AeroCine's counsel sought Vermeer's consent for a "modest extension of time to respond to the Complaint." *Id.* When counsel ultimately entered his appearance, he did so in a filing "nearly identical to the document held to waive personal jurisdiction in *Gerber*." *M & C Corp.*, 508 F. App'x at 502 & n.4.[2] Every option that AeroCine chose—retaining Tennessee-barred counsel, having counsel apply for admission rather than appearing *pro hac vice*, and ultimately filing a general appearance— "constituted a voluntary acceptance of the district court's jurisdiction, and therefore, a waiver of Defendant['s] personal jurisdiction defense." *Gerber*, 649 F.3d at 520.

On this basis alone, AeroCine motion to dismiss under Rule 12(b)(2) should be denied.

**B.** **AeroCine's conduct in this district is sufficient to establish personal jurisdiction.**

---

[1] The Court may consider evidence outside the pleadings when deciding a motion under Rule 12(b)(2). *See, e.g.*, *Kerns v. Caterpillar, Inc.*, 583 F. Supp. 2d 885, 891 n.1 (M.D. Tenn. 2008) (Trauger, J.).

[2] "That the court's Local Rules require counsel to file a notice of appearance is unpersuasive as to waiver because the Local Rules do not specify the form of the notice of appearance, leaving the decision to file a special or general appearance up to counsel. [AeroCine's] counsel chose the latter." *Cartwright v. Est. of Peterson*, No. 3:17-CV-01464, 2018 WL 4945232, at *5 (M.D. Tenn. July 2, 2018) (Trauger, J.).

6

In addition to expressly waiving a jurisdictional challenge, AeroCine has submitted itself to this Court's jurisdiction through its conduct in Tennessee. To establish a prima facie case of specific personal jurisdiction, a plaintiff must show that (1) the defendant has purposefully availed itself of jurisdiction in this state through certain minimum contacts; (2) the plaintiff's claims arise from the defendant's contacts with the state; and (3) the defendant's connection to the state is sufficiently substantial such that exercising jurisdiction is not unreasonable. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359–60 (2021); *Scott v. White*, 539 F. Supp. 3d 831, 841–42 (M.D. Tenn. 2021). Each of these elements is met here.

1. AeroCine has purposefully availed itself of this Court's jurisdiction.

To satisfy the "purposeful availment" factor, a plaintiff "must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum state or entering a contractual relationship centered there." *Ford Motor Co.*, 592 U.S. at 359 (quotations omitted). Other conduct that courts in this Circuit have held to collectively constitute purposeful availment includes: registering for and attending trade shows or conferences in the state (*Shaun Jackson Design, Inc. v. Mohawk USA LLC*, No. 15-12005, 2015 WL 9478029, at *4–6 (E.D. Mich. Dec. 29, 2015); *Bates v. CogniSens Athletics, Inc.*, No. 3:18-CV-00467, 2018 WL 3572382, at *5 (M.D. Tenn. July 24, 2018) (Trauger, J.)); maintaining a website manifesting an intent to do business nationwide, including in Tennessee (*Shaun Jackson Design,* 2015 WL 9478029, at *4–6; *Daycab Co., Inc. v. Prairie Tech., LLC*, No. 3:20-CV-63, 2021 WL 6276198, at *1 (E.D. Tenn. Oct. 5, 2021)); and hiring a Tennessee-based attorney to represent the defendant in relation to trademark issues (*Scott*, 539 F. Supp. 3d at 841).

Vermeer's well-pleaded allegations, construed in the light most favorable to Vermeer, are more than sufficient to make a prima facie showing under this precedent. As an initial matter,

AeroCine's motion identifies **no evidence whatsoever** to dispute the facts set forth in Vermeer's Complaint, and it has therefore failed to meet its burden at this stage. Indeed, AeroCine's Memorandum tacitly admits that it attended the 2023 Army Aviation Mission Solutions Summit in Nashville, Tennessee as "Vermeer," and that it maintains a website and social media pages accessible to Tennessee residents. Mot. 14. AeroCine does not deny that it has conducted business in Tennessee; rather, it contends that it "does not *regularly* conduct or solicit business in Tennessee, nor does it derive *substantial* revenue from goods used or consumed or services rendered in Tennessee." *Id.* at 16 (emphasis added). Putting aside AeroCine's failure to support any of these self-serving allegations with an affidavit or other competent evidence, these statements would be insufficient to meet AeroCine's burden of overcoming Vermeer's prima facie showing, even if true. Attending a trade show in the state to pursue Tennessee-based customers is sufficient to constitute purposeful availment—there is no requirement that AeroCine's trade-show presence directly lead to actual sales to Tennessee customers. *Shaun Jackson Designs*, 2015 WL 9478029, at *5–6 ("The fact that neither contact [including one contact made at a trade show in the forum state] resulted in a sale is immaterial to the purposeful availment analysis.").

Even so, AeroCine's tacit admission that it does in fact **sell products under the infringing marks to Tennessee customers**, regardless of the amount, is hallmark purposeful availment. "The proper test for personal jurisdiction is not based on a 'percentage of business' analysis as contended by [defendant], but rather on whether the absolute amount of business conducted by [the defendant] in [the forum state] represents something more than 'random, fortuitous, or attenuated contacts' with the state." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 891–92 (6th Cir. 2002). In *Neogen*, for example, the Sixth Circuit determined that the defendant blood-screening company had purposefully availed itself of jurisdiction in Michigan where only 14 of

that year's 215,000 blood-screening tests were performed on behalf of Michigan customers. *Id.* Here, AeroCine's many intentional contacts with Tennessee under its infringing VERMEER mark and stylized V logo constitute an attempt to "exploit a market" in Tennessee, and thus establish purposeful availment. *See Ford*, 592 U.S. at 359; *Shaun Jackson Design*, 2015 WL 9478029, at *4–6; *see also Bates*, 2018 WL 3572382, at *5.

AeroCine also promotes its products through its nationally accessible website and social media pages. The website (www.getvermeer.com) contains links to learn about AeroCine's various product offerings and to "Book [a] Demo"—all under the infringing marks, prominently displayed at the top of every page of the site. AeroCine attempts to downplay these substantial interactive elements by describing its website as a "static, passive platform that serves primarily as a splash page for potential customers to inquire about its goods and services." Mot. 16. This description may have been relevant, if at all, if Vermeer's allegations were based on AeroCine's website, on its own—but they are not. Taken together with Vermeer's other jurisdictional allegations, the fact that AeroCine "maintained and published a website with contact information and manifested an intent to do business nationwide, including in Tennessee," is "sufficient to constitute purposeful availment" and invoke the Court's jurisdiction. *Daycab*, 2021 WL 6276198, at *1.[3]

After all, this is not a case in which a defendant merely posted content online or offered a product in stores across the country. Rather, AeroCine's highest executives appeared *in person* in

---

[3] AeroCine's Motion further states that its website "does not even have a terms of use, as AeroCine's website is not intended to be used by users." Mot. 16. Whether this is a mistake or a semantic sleight of hand, AeroCine's website does contain both a "Legal" page and a "Terms" page, the latter of which includes "Terms of Use," which purport to "set forth the agreement between you and Aerobo [*i.e.*, AeroCine] regarding your access to and use of the App or any content, products, data or services provided to you on, from, or through the App (collectively, the 'Service')." *See* Exhibit B.

Nashville to promote AeroCine's products under trademarks that willfully infringe Vermeer's intellectual property rights. Compl. ¶ 44. If AeroCine's officers had committed a different tortious act while attending the Nashville trade show, AeroCine would not even attempt to challenge the Court's personal jurisdiction. *See, e.g.*, *Hammons v. Lasik Vision Inst., LLC*, No. 04-2243-B, 2006 WL 2583162, at *1 (W.D. Tenn. Sept. 6, 2006) (finding jurisdiction over doctor accused of malpractice where plaintiff averred that defendant "performed post-operative procedures on him in Collierville, Tennessee"); *cf. Coleman v. Chen*, 712 F. Supp. 117, 123 (S.D. Ohio 1988) (transferring slip-and-fall case to the district in which the fall took place). AeroCine's in-person commission of the tortious act of trademark infringement is no different. AeroCine has purposefully availed itself of the laws of Tennessee.

2.    <u>Vermeer's claims arise from AeroCine's contacts with Tennessee.</u>

Through its Motion, AeroCine admits that it has used its infringing marks in connection with a Tennessee trade show, sales to Tennessee customers, and its nationally accessible website and social media pages. *See* Mot. 13–16. Each of these acts, done under the infringing marks, give rise to Vermeer's infringement claims. Taken together, these facts are more than sufficient to meet Vermeer's "relatively slight" burden of showing that its claims arise from AeroCine's contacts with Tennessee. *CJ Advert., LLC v. Whitehardt, Inc.*, No. 3:10-0214, 2010 WL 3260068, at *6 (M.D. Tenn. Aug. 18, 2010) (Trauger, J.).

3.    <u>Exercising jurisdiction over AeroCine is not unreasonable.</u>

Once the first two personal-jurisdiction criteria are met, "there is an inference of reasonableness and only the unusual case will not meet this third criteria." *Scott*, 539 F. Supp. 3d at 842 (quotations omitted). "In determining whether the exercise of jurisdiction is reasonable, the court should consider, among others, the following factors: (1) the burden on the defendant; (2)

the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Bates*, 2018 WL 3572382, at *7.

This is not an unusual case. AeroCine has failed to articulate any specific reason why litigating in Tennessee would be unreasonable here, beyond a conclusory allegation that "[l]itigating in Tennessee would impose a significant burden on AeroCine, a New York-based company with no substantial connection to Tennessee." Mot. 20. The Motion does not state what that burden would be. AeroCine "does not, for example, argue that it would be forced to litigate in a foreign language or that it would face unreasonable travel burdens." *Bates*, 2018 WL 3572382, at *7 (finding reasonableness even where the defendant was based in a foreign country). Nor does AeroCine specify any physical evidence that would need to be brought to Tennessee, "as opposed to being electronically filed and transferred," to litigate in this forum. *Scott*, 539 F. Supp. 3d at 842. Despite its vague references to unspecified burdens, AeroCine readily admits that it has traveled to multiple trade shows across the country, including in Tennessee, for several years. Mot. 14 ("AeroCine's presence at this event was . . . undifferentiated from its participation in similar shows across the country."); *see Scott*, 539 F. Supp. 3d at 842–43 ("In terms of her own travel expenses, the Court notes that Defendant has travelled to Tennessee for music-related activities at least once a year over the last several years."). AeroCine has not met its burden as to this factor.

Nor does AeroCine dispute Vermeer's significant interest in obtaining relief. AeroCine has been willfully infringing Vermeer's trademarks for years, including in this District. This infringement is already causing actual consumer confusion and harm to Vermeer's reputation. Compl. ¶¶ 45–46. Rather than taking the good-faith approach of rebranding its fledgling venture, however, AeroCine has redoubled its efforts at every turn—first by altering its logo to be nearly identical to Vermeer's before sending Vermeer a baseless cease-and-desist letter, then by persisting

11

its unauthorized use even in the face of a trademark cancellation proceeding and mounting consumer confusion, and again in this litigation by seeking dismissal for personal jurisdiction despite physically committing tortious acts of infringement in the state of Tennessee. *See id.* ¶¶ 54–60.

### 4. Dismissal is not the appropriate remedy here.

Even if AeroCine had put forth specific evidence sufficient to overcome its express waiver of Vermeer's prima facie showing of jurisdiction—which it has not—dismissal would not be the appropriate relief here. AeroCine has put forth no evidence that would overcome a presumption of reasonableness in this case, so the Court is able to deny its Motion under the first of the Court's three available "paths": ruling on the motion on the basis of Vermeer's Complaint and the parties' submissions. *Music City Metals*, 2017 WL 4641866, at *2–3 (Trauger, J.). Given the early stage of these proceedings, the second available path would also be more appropriate than dismissal: ordering AeroCine to submit to jurisdictional discovery regarding the extent of its Tennessee activities. *See id.*[4]

---

[4] Alternatively, the Court could order that this case be transferred to the U.S. District Court for the Southern District of Iowa, where Vermeer is headquartered. Although AeroCine chose to move for dismissal, rather than transfer, its Motion repeatedly implies that jurisdiction would be more appropriate in Iowa. *See* Mot. 18 (listing allegations—which AeroCine mistakenly believes constitute Vermeer's "jurisdictional allegations"—as having occurred "in Iowa, not Tennessee," including an admission that AeroCine's cease-and-desist letter "was dispatched from New York to Vermeer in Iowa"), 20 ("Vermeer, as an Iowa corporation, has no particular interest in litigating in Tennessee as opposed to a more appropriate forum.").

To the extent that AeroCine's statements may be construed as a motion or consent to transfer this action to the Southern District of Iowa, Central Division under 28 U.S.C. §§ 1404(a), 1406(a) or 1631, Vermeer consents to such a transfer. The Court may also choose to transfer this case to the Southern District of Iowa *sua sponte*, in the interest of justice. *See Pearl Recs., Inc. v. Conner*, No. 3:22-CV-00096, 2023 WL 351203, at *7 (M.D. Tenn. Jan. 20, 2023) (transfer under § 1406(a)); *Concord Music Grp., Inc. v. Anthropic PBC*, No. 3:23-CV-01092, 2024 WL 3101098, at *10–11 (M.D. Tenn. June 24, 2024) (transfer under § 1631). Vermeer expressly opposes a transfer to New York or Delaware, where few—if any—of the potential customers who interacted with AeroCine

Nevertheless, the Court need not reach these options here because AeroCine has expressly waived its jurisdictional challenge and, even so, purposefully availed itself of the Court's jurisdiction through intentional acts aimed at Tennessee. AeroCine's Motion should be denied.

## II.     Vermeer's Complaint Exceeds Applicable Pleading Requirements.

### A.     The extreme remedy of dismissal is not warranted in this case.

AeroCine's Motion asserts that Vermeer's Complaint should be dismissed because it purportedly fails to set forth allegations "supported by evidence" to "controvert AeroCine's allegations." Mot. 23 (emphasis omitted). This is not the standard under Rule 12(b)(6).[5] Rather, the Complaint must simply "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Vermeer's Complaint easily meets this standard.

When a defendant contests the factual sufficiency of an infringement claim, as AeroCine tries to do here, the Sixth Circuit has repeatedly cautioned that "[g]enerally, dismissal for failure to state a claim upon which relief can be granted is appropriate in ***only the most extreme trademark infringement cases***, such as where goods are unrelated as a matter of law, since the likelihood of confusion is generally a question of fact." *Bliss Collection, LLC v. Latham Companies, LLC*, 82 F.4th 499, 508 (6th Cir. 2023) (emphasis added). Accordingly, "the federal viewpoint" has long been that the issue of likelihood of confusion "is a mixed factual and

---

at its trade-show appearances are likely to be located.

[5] Section II of AeroCine's Motion seems to blur the burden-shifting standard under Rule 12(b)(2)—which applies only to the Court's jurisdictional analysis—with the plausibility standard of Rule 12(b)(6) to form some improper hybrid standard requiring Vermeer to factually prove the merits of its claims at the motion-to-dismiss stage. *See* Mot. 20–25. AeroCine's argument in this section does not contain a single case citation, nor does AeroCine otherwise identify any authority indicating that this standard exists or is applicable here. *See id.* at 23–25. Vermeer thus focuses on the argument in Section III, which attempts to challenge the factual sufficiency of Vermeer's likelihood-of-confusion allegations under Rule 12(b)(6). *See id.* at 25–28.

legal question—and therefore is not appropriate for adjudication here at the pleading stage." *Kaldy v. Urshow.tv, Inc.*, No. 2:16-CV-54, 2017 WL 104148, at *3 (E.D. Tenn. Jan. 10, 2017). As explained further below, this is not an "extreme" case warranting dismissal. Even if the Court were to take on a factual analysis at this stage, AeroCine's Motion fails.

**B.    Vermeer's Complaint adequately alleges infringement.**

Vermeer's Complaint sets forth textbook claims of infringement. "The touchstone of liability for trademark infringement is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Bliss Collection*, 82 F.4th at 508 (cleaned up).[6] To determine whether a likelihood of confusion exists, the Sixth Circuit reviews eight non-exhaustive factors: "(1) the strength of the senior mark, (2) the relatedness of the goods or services, (3) the similarity of the marks, (4) evidence of actual confusion, (5) the marketing channels used, (6) the likely degree of purchaser care, (7) the intent of the defendant in selecting the mark, and (8) the likelihood of expansion of the product lines." *Bliss Collection*, 82 F.4th at 509. There is no requirement that the marks be identical or that the goods and services sold by each party directly compete. Rather, the ultimate question is "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Id.*

1.    <u>The parties' goods and services are legally related.</u>

Though it does not do so by name, the only factor that AeroCine appears to challenge here is the second: the relatedness of the goods or services. *See* Mot. 25–28. Rather than arguing the proper standard—that is, whether a typical buyer exercising ordinary caution would believe that

---

[6] The same "likelihood of confusion" standard applies to Vermeer's claims for federal unfair competition under the Lanham Act (15 U.S.C. § 1125(a)) and the Tennessee Consumer Protection Act. *See Microsoft Corp. v. Sellers*, 411 F. Supp. 2d 913, 919–20 (E.D. Tenn. 2006).

the party's goods come from the same source or are otherwise affiliated—AeroCine argues that "Vermeer [has] failed to offer facts plausibly showing that the disputed goods and services at issue here *overlap*." *Id.* at 25 (emphasis added). **This is not the test**. The Sixth Circuit determines relatedness of goods within a tripartite system: "First, if the parties compete directly, confusion is likely if the marks are sufficiently similar; second, if the goods and services are somewhat related, but not competitive, then the likelihood of confusion will turn on other factors; finally, if the products are unrelated, confusion is highly unlikely." *AWGI, LLC v. Atlas Trucking Co., LLC*, 998 F.3d 258, 266 (6th Cir. 2021). Even under this least-related third type, the Sixth Circuit has explicitly recognized a kind of infringement it calls "confusion of sponsorship," where, even though "the goods are unrelated enough that no inference arises that they originated from the same source," the marks in question are so similar that they "erroneously suggest[] a connection between the sources." *Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc.*, 679 F.3d 410, 419 (6th Cir. 2012).

Vermeer has stated a claim under these three standards of relatedness. Most importantly, the parties ***do offer overlapping goods***: both parties sell software and applications for the remote collection of data and machinery operation. Compl. ¶¶ 6 (AeroCine), 31 (Vermeer). Vermeer's VERMEER mark, for example, has been used in commerce with "computer software for fleet management" since 1999, and its stylized V logo has been in use with various software services, including "[p]roviding a website featuring technology that enables users to access and monitor geographic location, productivity, and maintenance of agricultural equipment and vehicles" since 2016. *See* Compl. Ex. A, at 1 (the "'606 Registration" for VERMEER), 6 (the "'357 Registration" for stylized V logo), ECF No. 1-2. AeroCine's Motion—like its 2022 letter insisting that Vermeer stop using its VERMEER marks due in part to the similarity of the goods sold under the marks—

15

acknowledges that this similarity exists, but attempts to split hairs between the parties' specific types of software applications. Mot. 27. These minute differences do not make the parties' goods non-competitive. In *AWGI*, for example, the Sixth Circuit affirmed a finding of direct relatedness between the services of a party that shipped general commodities, such as household goods, and one that delivered steel products, because both were engaged in "transportation services" that, when offered under similar marks, customers would believe came from the same source. *See* 998 F.3d at 266.

Even if the parties' goods were not directly overlapping, as they are here, they would still be legally related. When reviewing the second type of relatedness—where goods and services are somewhat related, but not competitive—federal courts typically take into consideration whether (1) the senior user has such a diversified product offering that consumers would likely believe that the junior user's goods, while not yet offered in the senior user's existing catalogue, are likely affiliated with the senior user; or (2) the junior user's goods are within the senior user's "zone of natural expansion," such as if the parties' goods are complementary or commonly sold by a single company, often determined by reviewing third-party websites or registrations. *See, e.g.*, 3 McCarthy on Trademarks and Unfair Competition §§ 24:19, 24:54 (5th ed. May 2024 update).

Vermeer's Complaint sufficiently alleges relatedness under either analysis. *First*, the Complaint sets forth detailed allegations regarding Vermeer's diverse product offerings and reputation for innovation in multiple industries. Compl. ¶¶ 26–32. AeroCine mischaracterizes these allegations as "effectively arguing that [Vermeer] owns the term VERMEER [f]or any technology in any industry" (Mot. 23), but Vermeer is not asserting that all use of the term VERMEER on wholly unrelated goods or services would be infringing. Rather, "[i]n this era of corporate diversification," the typical consumer is likely to believe that the drone software offered

16

by AeroCine is in some way connected to Vermeer, given its varied product lines aimed at industries that commonly use drones. *Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 966 (6th Cir. 1987). AeroCine's contrary interpretation of the relatedness standard—notably lacking any legal citations whatsoever—flies in the face of a century of Sixth Circuit precedent. *See, e.g.*, *id.*; *Vogue Co. v. Thompson-Hudson Co.*, 300 F. 509, 512 (6th Cir. 1924).[7]

*Second*, AeroCine's goods fall squarely within Vermeer's zone of natural expansion. Drones are increasingly used in agriculture, construction, and other industrial applications to gather data, deliver products, and remotely monitor crops and worksites. *See* Compl. ¶ 58. Indeed, numerous federal trademark registrations and patent publications indicate that drones (and software for drones) are already offered by third parties in Vermeer's target industries.[8] *See, e.g.*, U.S. Reg. No. 6,016,704 (for software and applications "all for use in the operation and control of drones and robots used in agriculture and horticulture"); U.S. Reg. No. 6,720,689 (for downloadable computer software "for operating industrial robots, drones, and robotic cars"); U.S. Reg. No. 5,477,791 (for computer software and programs including "software for aerial drone

---

[7] *Cf. Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 203 (5th Cir. 1998) ("Diversification makes it more likely that a potential customer would associate the nondiversified company's services with the diversified company, even though the two companies do not actually compete."); *Mobil Oil Corp. v. Pegasus Petrol. Corp.*, 818 F.2d 254, 258 (2d Cir. 1987) ("Mobil's ubiquitous presence throughout the petroleum industry further increases the likelihood that a consumer will confuse Pegasus Petroleum with Mobil."); *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 338 (S.D.N.Y. 2010) (noting that likelihood of confusion can occur where, "while there is no present intention to bridge the gap [between the parties' goods], consumers will assume otherwise and conclude, in this era of corporate diversification, that the parties are related companies").

[8] The Court may take judicial notice of publicly available USPTO filings without converting a motion to dismiss into one for summary judgment. *See, e.g.*, *Moran v. Edie Parker, LLC*, 563 F. Supp. 3d 671, 677 (E.D. Mich. 2021); *Maxberry v. Univ. of Ky. Med. Ctr.*, 39 F. Supp. 3d 872, 875 n.4–5 (E.D. Ky. 2014). The USPTO's Trademark Status & Document Retrieval (TSDR) database is accessible online at www.tsdr.uspto.gov.

surveying and mapping" and "data management of digital images in the fields of mining, agriculture, hydrology, and industrial inspection"); U.S. Reg. No. 6,060,876 (for "[u]nmanned aerial vehicles for transportation, inspections, inventory, photography, filming, mapping, paging, monitoring, agricultural business, forestry business; autonomous vehicles, namely, aircraft and drones"); U.S. Reg. No. 5,404,272 (for computer software "all for use in the operation and control of drones and robots used in agriculture and horticulture); U.S. Reg. No. 6,356,197 (for navigation systems "all for use in . . . agricultural and construction work," as well as "[s]oftware for operating unmanned aerial systems (UAS) comprised of drones and remote controllers for drones"); U.S. Pat. App. Pub. No. US 2023/0258071 (for "augmented reality system for use in horizontal directional drilling operations").

Vermeer and AeroCine offer directly overlapping goods and, even if they did not, their goods are related because consumers are likely to—and already do—believe that they come from the same source. AeroCine's Motion should be denied.

## 2. The remaining factors weigh in Vermeer's favor.

AeroCine's Motion fails to address any factor except the second, relatedness of the goods or services. Even if AeroCine were correct—and it is not—that the parties' goods were only somewhat related without being competitive, this would not end the analysis: "the likelihood of confusion will turn on [the] other factors." *Maker's Mark*, 679 F.3d at 423. AeroCine does not, and cannot, argue that Vermeer has failed to plead facts supporting the remaining confusion factors.

The first factor, the strength of the senior marks, weighs firmly in Vermeer's favor. "In general, the stronger the mark, all else equal, the greater the likelihood of confusion." *Id.* (cleaned up). "A mark is strong and distinctive when the public readily accepts it as the hallmark of a

particular source; such acceptance can occur when the mark is unique, when it has received intensive advertisement, or both." *Bliss Collection*, 82 F.4th at 509 (quotations omitted). The Complaint explains in great detail that Vermeer has used its VERMEER mark since at least as early as 1948; that the VERMEER mark is used as a source identifier for all of Vermeer's goods and services; that many of Vermeer's federal registrations are incontestable; and, most importantly, that the VERMEER marks are the result of hundreds of millions of dollars in advertising investment that drive billions of dollars in product and service sales every year. Compl. ¶¶ 14–25. Vermeer has more than plausibly alleged the strength of its mark.

The third factor, similarity of the marks, is easily met here: the marks depicted in the parties' standard-character VERMEER registrations are identical, and the parties' respective stylized word marks and V logos, as used in commerce, are nearly identical. *See, e.g.*, *id.* ¶ 53. This favor strongly favors Vermeer.

The fourth factor, evidence of actual confusion, while considered "undoubtedly the best evidence of likelihood of confusion," is not necessary to prevail on an infringement claim "due to the difficulty of securing evidence of actual confusion" in practice. *Bliss Collection*, 82 F.4th at 512 (cleaned up). Nonetheless, even at this early pleading stage, Vermeer ***has submitted evidence of actual confusion***. Compl. ¶¶ 45–46. This factor weighs heavily in Vermeer's favor.

The fifth factor, marketing channels used, also favors Vermeer. Both parties market their goods on their websites, on social media, and directly to customers—such as through industry trade shows. *See id.* ¶¶ 22, 41–44. Indeed, even the website URLs for Vermeer (vermeer.com) and AeroCine (getvermeer.com) are confusingly similar. AeroCine raises no challenge to these facts.

The sixth factor, likely degree of purchaser care, "although relevant, will be less significant than, or largely dependent upon, the similarity of the marks at issue." *Bliss Collection*, 82 F.4th at

513 (quotations omitted). That is, where the marks are identical—as they are here—consumer care does not have a significant effect on the potential for consumer confusion because even the most careful consumer may not realize that they are not purchasing from the retailer they intended. *See id.* This factor is therefore neutral and afforded minimal weight.

The seventh factor, intent of the defendant in selecting the mark, is also met here. "If a party chooses a mark with the intent of causing confusion, that fact alone may be sufficient to justify an inference of confusing similarity." *Id.* "Direct evidence of intentional copying is not necessary to prove intent." *Id.* Rather, "intent to infringe can be shown by circumstantial evidence," such as a junior user's incremental changes to its own marks to look increasingly similar to the senior user's—which is exactly what AeroCine has done. *Id.* AeroCine has undoubtedly been aware of Vermeer's rights in the VERMEER marks and stylized V logo since at least 2018, when it submitted Google search results to the Trademark Examiner prominently displaying Vermeer's marks and indicating that AeroCine had even visited one of Vermeer's websites prior to the submission. Compl. ¶ 51. It was only after that submission that AeroCine revised its existing stylized VERMEER mark and V logo to mimic Vermeer's marks almost identically. *Id.* ¶¶ 52–53. This factor also weighs in Vermeer's favor.[9]

In sum, Vermeer's Complaint pleads facts showing that at least seven of the eight confusion factors weigh in its favor, and one is neutral. AeroCine's Motion fails to address any of these factors except the second, which favors Vermeer. Vermeer's Complaint plausibly alleged each of its infringement and unfair-competition claims, and AeroCine's motion to dismiss should be denied.

---

[9] Vermeer addresses the eighth factor, likelihood of expansion of the product lines, in Section II(B)(1), above. AeroCine's Motion does not address this factor whatsoever.

**C.  Vermeer is inarguably the senior user with the priority necessary to bring an infringement claim.**

The final section of AeroCine's brief contains a single paragraph arguing that because AeroCine's registration was registered on December 3, 2019, and Vermeer's '357 Registration was not registered until January 30, 2024, AeroCine has established itself as "senior by several years," rendering it "impossible" for AeroCine's VERMEER registration to infringe Vermeer's '357 Registration. Mot. 28; *see also id.* at 27 ("The '357 Reg., however, is junior to AeroCine's mark and thus cannot plausibly form the basis of an infringement claim against AeroCine's senior mark, as AeroCine was using its mark and its stylized 'V' logo before Vermeer ever even used its '357 Reg."). This statement is both factually and legally inaccurate.

AeroCine's reliance on the marks' registration dates as a basis for asserting priority is misplaced. Even so, Vermeer is undoubtedly the senior user here. It is well-settled that U.S. trademark rights flow from use, not registration. While a federal registration is prima facie evidence—or, in the case of incontestable registrations (like many of Vermeer's), conclusive evidence—of a registrant's exclusive ownership of a mark, "[f]ederal registration of a trademark or service mark cannot create rights or priority over others who have previously used the mark in commerce," as Vermeer has here. *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 572 (6th Cir. 2001). Rather, "[t]he rights of a holder of a trademark are always subject to any superior common law rights acquired by another party through actual use prior to the registrant's use." *Wilfong v. Starstruck Ent., LLC*, No. 3:23-CV-00044, 2024 WL 1421255, at *5 n.2 (M.D. Tenn. Apr. 2, 2024) (Trauger, J.) (alterations omitted) (quoting *Allard*, 249 F.3d at 572). While Vermeer's '357 Registration was not registered until 2024, the mark depicted in the registration has been in use since 2016. *See* Compl. Ex. A, at 6. Thus, AeroCine's 2019 registration date does not establish priority over Vermeer's senior common-law rights in the '357 Registration,

and Vermeer has sufficiently alleged that it is the senior user for the purposes of asserting an infringement claim.

Moreover, the registration dates in question are ultimately irrelevant to Vermeer's claims. The Complaint sets forth four counts of unfair competition: Count I alleges that AeroCine's use of the mark VERMEER infringes Vermeer's federal registrations for the standard-character mark VERMEER, including the '606 Registration. Count II asserts that AeroCine's use of a stylized V logo—which AeroCine wrongfully uses in connection with a registration symbol [®] despite lacking any federal registration for the mark—infringes Vermeer's federal registrations for its stylized V logo, including the '357 Registration.[10] Nowhere in the Complaint does Vermeer allege that AeroCine's use of the VERMEER mark infringes Vermeer's '357 Registration for a stylized V logo.

Vermeer's Complaint plausibly alleges that it is the senior user of multiple federally registered and common-law trademarks, which AeroCine is willfully infringing in violation the Lanham Act and Tennessee law. AeroCine's Motion should be denied with prejudice.

## CONCLUSION

AeroCine has failed to establish any valid basis for dismissal. AeroCine waived any challenge to personal jurisdiction under Rule 12(b)(2) when its counsel entered a general appearance in this matter. Even without that express waiver, AeroCine is subject to personal jurisdiction in this District due to its acts of infringement in Tennessee and related online activities,

---

[10] For the sake of completion and further clarity, Count III alleges that AeroCine's use of a stylized VERMEER mark and V logo infringe Vermeer's *common-law* rights in its own stylized VERMEER mark and V logo (including marks that are not currently subject to federal registration). Count IV (mistakenly labeled Count V in the Complaint) alleges that AeroCine's deceptive use of the VERMEER mark and V logo in connection with its Tennessee trade-show constitutes multiple violations of the Tennessee Consumer Protection Act.

which AeroCine has failed to contradict with affidavits or other specific evidence. As to AeroCine's Rule 12(b)(6) Motion, Vermeer's complaint sets forth ample plausible allegations in support each element of its claims, including specific facts showing the relatedness of the parties' goods.

Accordingly, AeroCine's Motion to Dismiss (ECF No. 15) should be denied with prejudice. Alternatively, Vermeer respectfully requests that the Court order AeroCine to submit to limited jurisdictional discovery regarding its wrongful conduct in this District or transfer this action to the Southern District of Iowa, Central Division.

Dated:  August 28, 2024.  Respectfully submitted,

By: */s/ William T. Ramsey*
William T. Ramsey (BPR #009245)
Mariam N. Stockton (BPR #029750)
Elizabeth C. Tirrill (BPR #041346)
NEAL & HARWELL, PLC
1201 Demonbreun St., Ste. 1000
Nashville, Tennessee 37203
(615) 244-1713
wtr@nealharwell.com
mstockton@nealharwell.com
etirrill@nealharwell.com

Richard L. Brophy (*pro hac vice*)
Melanie E. King (*pro hac vice*)
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621–5070
rbrophy@atllp.com
meking@atllp.com

*Attorneys for Plaintiff Vermeer*
*Manufacturing Company*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was electronically filed and served upon the following counsel of record using the Court's CM/ECF electronic filing system on this 28th day of August, 2024:

Casey Scott McKay
MC Law, PLLC
1441 U St. NW, Suite 102
Washington, DC 20009
casey@mclaw.io

*/s/ William T. Ramsey*
*Counsel for Plaintiff*