IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| VERMEER MANUFACTURING COMPANY, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) Case No. 3:24-cv-00699 |
| | ) Judge Aleta A. Trauger |
| v. | )<br>) |
| AEROCINE VENTURES INC., | )<br>)<br>) |
| Defendant. | ) |

**MEMORANDUM**

This case concerns a trademark dispute. The defendant has filed a Motion to Dismiss (Doc. No. 15), to which the plaintiff has filed a Response (Doc. No. 18), and the defendant has filed a Reply. (Doc. No. 20.) The Motion to Dismiss will be granted.

**I.       FACTS**

The plaintiff, Vermeer Manufacturing Company ("Vermeer"), is an Iowa corporation with its principal place of business in Iowa. (Doc. No. 1 ¶ 5.) Vermeer designs, manufactures, and sells industrial and agricultural equipment. (*Id.*) The defendant, AeroCine Ventures Inc. ("AeroCine"), is a Delaware corporation with its principal place of business in New York. (*Id.* ¶ 6) AeroCine "offers software for augmented reality drone navigation." (Doc. No. 15-1 at 25.) At issue is a trademark dispute over the mark VERMEER[1] and related logos. *Both* parties have registered the mark VERMEER.

---

[1] For clarity, the court will refer to the plaintiff as "Vermeer" and the mark as "VERMEER."

1

Vermeer owners several registered and common law trademark rights in the mark and trade name VERMEER. (Doc. No. 1 ¶ 14.) Vermeer uses VERMEER as its "house mark" to identify "all goods and services it offers." (*Id.* ¶ 15.) In addition to the VERMEER mark, Vermeer uses a logo—a "stylized letter 'V.'" (*Id.*) Vermeer owns five relevant registered trademarks—Registrations 2,593,606 and 1,771,115, which are variations on the word, "VERMEER"—and Registrations 3,346,180, 7,295,357, and 4,752,754, which are variations on the stylized "V."[2] (*Id.* ¶ 16; Doc. No. 1-2.) Vermeer has used the VERMEER mark since "at least" 1948 and the logo since "at least" 2006. (Doc. No. 1 ¶¶ 20–21.)

According to the Complaint, Vermeer has "invented cutting-age machines and equipment in a variety of industries," including, for example, the stump grinder, the utility trencher, the round hay baler, and horizontal directional drills. (*Id.* ¶¶ 26–31.) Vermeer has also "developed multiple kinds of software to increase job efficiency." (*Id.* ¶ 31.) Through its "decades of innovation, consumers associate Vermeer with cutting-edge products that are not limited to a single industry and which may not yet be offered by its direct competitors." (*Id.* ¶ 32.)

In 2019, AeroCine registered Trademark 5,927,317 for the mark VERMEER for "software for augmented reality drone navigation." (Doc. No. 1-3 at 2.) In addition to using the mark VERMEER, according to the Complaint, AeroCine has used a stylized "V" next to the mark VERMEER. (Doc. No. 1 ¶ 41.) AeroCine displayed the VERMEER mark and stylized "V" logo at its booth at the 2023 Army Aviation Mission Solutions Summit in Nashville, Tennessee—in this judicial district. (*Id.* ¶¶ 43–44.) In addition, Vermeer alleges that AeroCine has marketed its infringing products through its website, which is accessible to residents of this judicial district. (*Id.* ¶ 10.)

---

[2] The '754 mark contains both a stylized "V" and the word "VERMEER." (Doc. No. 1-2 at 8.)

## II. PROCEDURAL HISTORY

In July 2022, AeroCine contacted Vermeer about their respective uses of the VERMEER mark. (*Id.* ¶ 54; Doc. No. 15-1 at 8.) Three weeks later, AeroCine sent Vermeer a letter demanding that it cease using the VERMEER mark. (Doc. No 1 ¶ 55.) On August 16, 2022, Vermeer filed a petition to the Trademark Trial and Appeal Board to cancel Vermeer's '317 Registration. *Vermeer Mfg. Co. v. AeroCine Ventures*, Cancellation No. 92080355 (T.T.A.B. Aug. 16, 2022). AeroCine filed an Answer and Counterclaim, arguing that the Board should cancel Vermeer's '606 registration. Respondent's Answer to Petition for Cancellation at 1, 14, *Vermeer Mfg. Co. v. AeroCine Ventures*, Cancellation No. 92080355 (T.T.A.B. Sept. 26, 2022). Soon after this case was filed, the Board stayed its related case.[3]

On June 6, 2024, Vermeer filed its Complaint (Doc. No. 1), alleging that AeroCine's willful infringement of the VERMEER mark and logo has caused and will cause consumer confusion and imposes reputational risks to Vermeer's good name. (Doc. No. 1 ¶¶ 45–69.) Vermeer alleges trademark infringement for the VERMEER mark (Counts I & II) (*Id.* ¶¶ 70–91); federal unfair competition under the Lanham Act, 15 U.S.C. § 1125(a) (Count III) (*Id.* ¶¶ 92–100); and unfair competition under the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104 (Count IV[4]) (*Id.* ¶¶ 101–108.) Vermeer seeks an order cancelling AeroCine's '317 registration; an order directing AeroCine to abandon or surrender any and all applications or registrations of the VERMEER mark; a preliminary and permanent injunction enjoining AeroCine from using the

---

[3] Stay Order, *Vermeer Mfg. Co. v. AeroCine Ventures*, Cancellation No. 92080355 (T.T.A.B. Aug. 21, 2024).

[4] The Complaint mislabels Count IV as "Count V"—there are only four counts. (*Accord* Doc. No. 18 at 27 n.10 ("Count IV (mistakenly labeled Count VI in the Complaint)").)

3

VERMEER mark; unjust enrichment; treble damages for willful conduct; and punitive, compensatory, and exemplary damages. (*Id.*, at 22–24.)

In response to the Complaint, AeroCine filed its Motion to Dismiss (Doc. No. 15), arguing that this court should dismiss all the claims against it, with prejudice, because this court lacks personal jurisdiction and because the plaintiff fails to state a claim for relief. (Doc. No. 15-1.) Vermeer maintains that AeroCine has waived its jurisdictional defense; that, in the alternative, this court's exercise of personal jurisdiction over it would not offend due process; and that Vermeer has stated a claim for relief. (Doc. No. 18.)

## III.   LEGAL STANDARD—RULE 12(b)(2)

A defendant may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Personal jurisdiction is '[a]n essential element of the jurisdiction of a district . . . court' and without personal jurisdiction the court is 'powerless to proceed to an adjudication.'" *Mgmt. Registry, Inc. v. Could Consulting Partners*, No. 3:19-CV-00340-JHM, 2019 WL 4478860, at *3 (W.D. Ky. Sept. 18, 2019) (quoting *Emps. Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)). To defeat a motion to dismiss under Rule 12(b)(2), the plaintiff must make a *prima facie* showing that the court has personal jurisdiction. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). The court must consider the pleadings in the light most favorable to the plaintiff but also must consider any undisputed factual assertions by the defendant. *Id.*

## IV.   DISCUSSION

### A.   Waiver of Personal Jurisdiction Defense

The plaintiff argues that the defendant has waived its jurisdictional defense because its Tennessee-barred counsel applied for admission to this court—rather than appearing *pro hac vice*—and filed a general appearance—rather than a special appearance. (Doc. No. 18 at 10–11.)

This argument is unavailing. "Filing notice of appearance does not, on its own, cause [a] defendant to waive [its] personal jurisdiction defense." *Blessing v. Chandrasekhar*, 988 F.3d 889, 894 (6th Cir. 2021). Nor does it matter that defense counsel filed a *general* rather than *special* notice of appearance. *See id.* at 899 ("A defendant need not file a special appearance to preserve her personal jurisdiction defense.").

Yet, a "defendant may waive [its] defense if the district court, after 'consider[ing] all of the relevant circumstances . . . ' determines that the defendant's litigation conduct gave the plaintiff a 'reasonable expectation' that the defendant intended to 'defend the suit on the merits' or the conduct 'cause[d] the court to go to some effort that would be wasted if personal jurisdiction is later found lacking.'" *Id.* (citing *King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012); *Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) (second and third alterations in the originals)). Examples of conduct that could give the plaintiff just such a reasonable expectation include the defendant's waiting too long to raise the defense, *Est. of Gibson by & through Shadd v. Daimler N. Am. Corp.*, 638 F. Supp. 3d 735, 741 (E.D. Ky. 2022), or filing a responsive pleading or Rule 12(b) motion without raising a jurisdictional defense. *Gilmore v. Aimbridge Hosp., LLC*, No. 2:21-CV-2661-SHL-TMP, 2022 WL 3584672, at *3 (W.D. Tenn. Aug. 16, 2022). Neither is the case here. The defendant raised the jurisdictional defense in its first substantive motion, which it filed twenty-two days after its Notice of Appearance. (Doc. No. 15 at 1 (filed July 24, 2024); Doc. No. 12 (filed July 2, 2024).)

The plaintiff further argues that, in addition to filing a general appearance, the defendant engaged in other conduct indicating that it would defend the suit on the merits: the plaintiff retained Tennessee-barred counsel, who applied for admission to this court rather than appearing *pro hac vice*. (Doc. No. 18 at 11.) This argument, too, is unpersuasive.

5

Even *if* these circumstances *could* count among those that indicate to the plaintiff's counsel that the defendant intends to defend an action on the merits, it is not the case here because, as the plaintiff knows, defense counsel appeared in the related trademark cancellation proceeding two years ago.[5] The defendant's decision to continue to be represented by its Tennessee-barred attorney in this action, as well, is not probative of anything relevant. Neither is defense counsel's decision to apply for admission to this court rather than for *pro hac vice* admission. Admission by either route affords counsel equal ability to represent a client in a particular case.[6] If anything, defense counsel's decision to apply for admission to this court indicates that he intends to represent clients in *other* cases before this court.

In addition, a defendant may indicate that it intends to defend a case on the merits when it makes an unqualified request for dismissal under Rule 12(b)(6)—which the court may grant only if it has personal jurisdiction over the defendant—or if it seeks dismissal with prejudice—which is generally inappropriate relief for lack of personal jurisdiction.[7]

---

[5] *See* Notice of Appearance of Counsel, *Vermeer Mfg. Co. v. AeroCine Ventures*, Cancellation No. 92080355 (T.T.A.B. Sept. 26, 2022).

[6] *See* L.R. 83.01(e)(4) ("Entry of an appearance . . . is a representation that the attorney will be prepared to conduct the trial of the case.").

[7] "[D]ismissals for lack of personal jurisdiction should be made 'without prejudice.'" *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). *But cf. Mitan v. Int'l Fid. Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001) ("Dismissals of actions that do not reach the merits of a claim, such as dismissals for lack of jurisdiction, *ordinarily* are without prejudice." (emphasis added)); *Bass v. Bass*, No. 3:20-0203, 2021 WL 6618461, at *10 n.9 (M.D. Tenn. Dec. 6, 2021) (Holmes, M.J.) ("[A] dismissal under 12(b)(2) for lack of personal jurisdiction, is *ordinarily* without prejudice[.]" (emphasis added) (citing *Intera*, 428 F.3d at 620)), *R&R adopted*, No. 3:20-CV-00203, 2022 WL 187816 (M.D. Tenn. Jan. 20, 2022). Indeed, courts in this circuit have, albeit rarely, dismissed cases with prejudice upon Rule 12(b)(2) motions. *See, e.g.*, *Elmore v. Memphis & Shelby Cnty. Film Comm'n*, No. 2:21-CV-02330JTF-CGC, 2022 WL 1836734, at *2 (W.D. Tenn. June 3, 2022) (dismissing the case "with [p]redudice pursuant to Fed. Rules Civ. P. 12(b)(1), 12(b)(2) and 12(b)(6)"); *Aces High Coal Sales, Inc. v. Cmty. Tr. & Bank of W. Ga.*, No. CV 15-161-DLB-HAI, 2017 WL 3122661, at *20 (E.D. Ky. July 21, 2017) ("all claims against [a subset of defendants] are dismissed with prejudice pursuant to Rule 12(b)(2)").

In this case, while the defendant could have made it clearer that its Rule 12(b)(6) motion and request for dismissal with prejudice are conditional on this court's denying the Rule 12(b)(2) motion, because the defendant's jurisdictional challenge precedes and predominates over its merits challenge in the Motion, this court construes the Motion as making an argument in the alternative and a request for relief in the alternative.[8]

In sum, the court finds that the defendant has not waived its objection to personal jurisdiction.

### B. Personal Jurisdiction Analysis

The party asserting personal jurisdiction bears the burden of demonstrating that such jurisdiction exists. *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449–50 (6th Cir. 2012) (citing *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)). The "weight of the burden . . . depends on whether the trial court chooses to rule on written submissions or to hear evidence on the personal-jurisdiction issue." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Serras v. First Tenn. Bank Nat'l Assoc.*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

---

[8] Parties should be aware of rulings by this court that a defendant "who makes an apparently unqualified request that the Court exercise jurisdiction to grant a dismissal pursuant to Rule 12(b)(6), which generally is a dismissal *on the merits*—risks being deemed to have waived its challenge to the Court's exercise of personal jurisdiction." *Santoni v. Mueller*, No. 3:20-CV-00975, 2022 WL 97049, at *8 n.9 (M.D. Tenn. Jan. 10, 2022) (Richardson, J.) (emphasis in original) (citing *Brunson v. Capitol CMG, Inc.*, No. 3:20-CV-01056, 2021 WL 3081327, at *2 (M.D. Tenn. July 21, 2021) (Richardson, J.), *motion to certify appeal denied*, No. 3:20-CV-01056, 2021 WL 3406686 (M.D. Tenn. Aug. 4, 2021)).

7

When considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a court has three options. It may (1) rule on the motion based on affidavits and materials the parties submit, (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998). Neither party has requested discovery or an evidentiary hearing, so the court will "rule[] on written submissions alone." *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499 (6th Cir. 2020) (quoting *Schneider*, 669 F.3d at 697). In this situation, the plaintiff need only make out a *prima facie* case of personal jurisdiction. *Id.* A plaintiff's burden, under this option, "is relatively slight[.]" *Ingram Barge Co., LLC v. Zen-Noh Grain Corp.*, 3 F.4th 275, 278 (6th Cir. 2021).

To determine whether the plaintiff has made this *prima facie* showing, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff." *Dean*, 134 F.3d at 1272 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)). In so doing, the court does not weigh or consider the conflicting facts presented by the other side. *Bird*, 289 F.3d at 871; *see also Dorm v. Dominique*, No. 22-5620, 2023 WL 2543714, at *4 (6th Cir. Mar. 14, 2023) ("The court must . . . ignore the defendant's controverting assertions." (citing *CompuServe*, 89 F.3d at 1262)); *Carter v. Univ. of Tex. at Dallas*, No. 20-1714, 2021 WL 243811, at *2 (6th Cir. Jan. 20, 2021) ("In these circumstances, we do not consider the controverting assertions of the defendants." (citing *Dean*, 134 F.3d at 1271)). But the court need not "ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff." *Kerry Steel, Inc. v. Paragon Indus.*, 106 F.3d 147, 153 (6th Cir. 1997).

Where a court's subject matter jurisdiction over a case stems from the existence of a federal question, "personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would

8

not deny the defendant due process.'" *Bird*, 289 F.3d at 871 (citation and internal quotation marks omitted). Tennessee's long-arm statute provides for personal jurisdiction over nonresidents on "[a]ny basis not inconsistent with the constitution of this state or of the United States." Tenn. Code. Ann. § 20-2-214(a)(6). This statute "has been interpreted to be 'coterminous with the limits on personal jurisdiction imposed' by the Due Process Clause of the United States Constitution, and thus, 'the jurisdictional limits of Tennessee law and of federal constitutional law of due process are identical.'" *Smith v. Home Depot USA, Inc.*, 294 F. App'x 186, 189 (6th Cir. 2008) (quoting *Intera Corp.*, 428 F.3d at 616); *see also Harmer v. Colom*, 650 F. App'x 267, 272 (6th Cir. 2016) ("Tennessee's long-arm statute goes to the due process clause's limit.") (citing *Gordon v. Greenview Hosp. Inc.*, 300 S.W. 3d 635, 645 (Tenn. 2009)). Thus, Vermeer need only show that personal jurisdiction over AeroCine comports with federal due process. Due process requires that a defendant have "minimum contacts . . . with the forum State . . . such that he should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980), and that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice," *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

There are two forms of personal jurisdiction—general and specific, depending on the nature of the defendant's contacts with the forum state. *See Bird,* 289 F.3d at 873. The plaintiff argues only that this court has specific personal jurisdiction. (Doc. No. 18 at 11–16.) Thus, this court will not consider whether it has general personal jurisdiction over the defendant. Specific personal jurisdiction applies to defendants "less intimately connected" with a state. *Ford Motor Co. v. Mont. Eighth Judicial District Court*, 592 U.S. 351, 352 (2021) (internal citations and quotation marks omitted).

The Sixth Circuit applies "a three-part test to determine whether the exercise of personal jurisdiction . . . comports with constitutional due process." *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016). "First, the defendant must *purposefully avail* himself of the privilege of acting in the forum state or causing a consequence in the forum state." *Id.* (emphasis in original) (quoting *Air Prods. & Controls, Inc. v. Safetech Int'l*, 503 F.3d 544, 550 (6th Cir. 2007)). Second, the claims "'must arise out of or relate to the defendant's contacts' with the forum." *Ford*, 592 U.S. at 359 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017)); *see also AlixPartners*, 836 F.3d at 549. Third, "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *AlixPartners*, 836 F.3d at 549–50 (quoting *Air Prods.*, 503 F.3d at 550). Because the court finds that the defendant has not purposefully availed itself of the privilege of acting in Tennessee or causing a consequence in Tennessee, it does not address the other necessary elements of the test for specific personal jurisdiction.

Under the Due Process Clause, AeroCine must have "take[n] 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.' The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford*, 592 U.S. at 359 (second alteration in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)). This requires a showing "that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." *Id.* at 1025 (alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)), and in so doing "create continuing relationships and obligations with citizens of another state." *Burger King Corp. v. Rudzewicz*, 471

10

U.S. 462, 473 (1985) (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)); *see also Kettering Adventist Healthcare v. Jade Designs, LLC*, No. 3:21-CV-136, 2021 WL 4844082, at *5 (S.D. Ohio Oct. 18, 2021) ("For instance, where a party creates a continuing obligation in the state or where a business relationship is intended to be ongoing in nature." (citing *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 900 (6th Cir. 2017); *Air Prods.*, 503 F.3d at 551; *AlixPartners*, 836 F.3d at 550)).

"'[P]urposeful availment is something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state's] opportunities.'" *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 891 (6th Cir. 2002) (internal citation and quotation omitted). "The 'purposeful availment' requirement is satisfied when the defendant's contacts with the forum state 'proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State,' and when the defendant's conduct and connection with the forum are such that he 'should reasonably anticipate being haled into court there.'" *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (emphasis in original) (quoting *Burger King*, 471 U.S. at 474–75).

Vermeer need only make a *prima facie* showing of personal jurisdiction. In support of this showing, Vermeer alleges two bases for this court's jurisdiction. First, AeroCine attended a 2023 Nashville trade show during which it "used its infringing VERMEER mark to market its goods and services to residents of this District." (Doc. No. 1 ¶ 9.) "On this basis alone," the plaintiff alleges, "AeroCine is subject to personal jurisdiction in this district." (*Id.*) Second, "AeroCine has further availed itself of jurisdiction in Tennessee by marketing its infringing products online

11

through its social media profiles and its website . . . which are accessible worldwide, including by residents of this District." (*Id.* ¶ 10; *see also id.* ¶¶ 43–44 ("AeroCine uses [an] evolved VERMEER mark and stylized V logo to market its software online and at trade shows across the country.").)

The defendant does not dispute the factual allegations but argues that "operating a booth for a few days at a rotating military defense trade show and a passive online presence through social media and a website accessible worldwide" do not suffice for purposeful availment. (Doc. No. 15-1 at 17.) This court agrees.

TRADE SHOW

The plaintiff alleges that "AeroCine's highest executives appeared *in person* in Nashville to promote AeroCine's products under trademarks that willfully infringe Vermeer's intellectual property rights." (Doc. No. 18 at 14–15 (citing Doc. No. 15 ¶ 44) (emphasis in original).) The plaintiff's asserted jurisdictional basis hinges on the defendant's mere attendance at the 2023 Army Aviation Summit in Nashville, where it displayed a sign with the allegedly infringing trademark. There is no allegation that, while at the trade show, the defendant sold any products, entered into any contracts or business relationships, or even engaged with any Tennessean.

The defendant describes its attendance at the trade show this way:

> The 2023 Army Aviation Summit is part of a national circuit of military trade shows that rotate through different states. AeroCine did not choose Tennessee as a specific market to enter; rather, Tennessee was incidentally selected by event organizers. AeroCine's presence at this event was passive and undifferentiated from its participation in similar shows across the country. There is no evidence of any Tennessee-specific marketing or tailoring of its presence to appeal particularly to Tennessee residents or businesses. Highly specialized industry experts travel from all over the world to attend these military and defense shows. Any connection to Tennessee concerning the 2023 Army Aviation Summit was a one time thing.

(Doc. No. 15-1 at 14.)[9]

---

[9] The court notes that, while at this stage of the litigation, "the court must consider the pleadings . . . in a light most favorable to the plaintiff," *Dean*, 134 F.3d at 1272 (citation omitted), and must

12

The defendant's one-time participation at an international trade show in a forum it did not select is a "random, isolated, [and] fortuitous" contact. *Accord Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000) (finding the defendant's business trips to the forum "fortuitous" and insufficient for purposeful availment); *see also C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1323–24 (10th Cir. 2019) (holding that a company's three visits to Colorado trade shows to promote its trademark did not "show the purposeful availment of Colorado necessary for jurisdiction to arise"). As was the case for CeramTec, AeroCine's "attendance at [the] tradeshow[] in [Tennessee], as opposed to some other state, was by chance." *Id.* at 1323.

The plaintiff cites cases for the proposition that the defendant's attending a trade show in a forum state constitutes purposeful availment of the forum. (Doc. No. 18 at 12.) But they are distinguishable. In *Shaun Jackson Design, Inc. v. Mohawk USA LLC*, for example, the court found that the defendant's participation in a trade show was one of several contacts that, "[v]iewed in their entirety," amounted to purposeful availment. No. 15-12005, 2015 WL 9478029, at *6 (E.D. Mich. Dec. 29, 2015). In addition to allegedly attending a Michigan trade show where it displayed infringing merchandise, the defendant had an interactive website through which orders could be placed, and it sent samples to a Michigan sales representative and to Michigan schools. *Id.* at *5–6. In *Bates v. CogniSens Athletics, Inc.*, this court found that, while "twice appear[ing] in Tennessee . . . to attend conferences" might not, on its own, have sufficed for purposeful availment, *when taken together with other significant and sustained contacts*, there was purposeful availment.

---

"ignore the defendant's controverting assertions," *Dorm*, 2023 WL 2543714, at *4 (citation omitted), the defendant's assertions here do not contravene the plaintiff's pleadings. The court need not "ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff." *Kerry Steel*, 106 F.3d at 153.

No. 3:18-CV-00467, 2018 WL 3572382, at *4–6 (M.D. Tenn. July 24, 2018). Other courts have held similarly. *See, e.g.*, *Hand Candy Toys LLC v. Fwoosh LLC*, No. EDCV 21-1040 JGB-KKX, 2021 WL 10428734, at *7 (C.D. Cal. Oct. 14, 2021) (noting that participation in a California trade show "*along with other activities directed at the forum state* demonstrates an act expressly aimed at the forum state" (emphasis added) (citation omitted)); *ASM Assembly Sys. Switzerland GmbH v. QTS Eng'g, Inc.*, No. 15-CV-714 BEN-RBB, 2016 WL 278734, at *2 (S.D. Cal. Jan. 22, 2016) ("The Court does not find that a single appearance at an international annual trade show constitutes 'purposefully direct[ing] its activities' at California residents.").

Thus, AeroCine's one-time "'fortuitous contact[] [is] not the purposeful availment required for a finding of specific jurisdiction." *C5 Medical Werks*, 937 F.3d at 1324 (citation and internal quotation marks omitted).

INTERNET PRESENCE

As an additional basis for personal jurisdiction,[10] the plaintiff alleges that the defendant maintained a website through which it "marketed its infringing products." (Doc. No. 1 ¶ 10.)

"[T]o determine whether an operator of a website purposefully availed [itself] of the forum state, the Court looks at the website's level of interactivity." *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 F. App'x 518, 522 (6th Cir. 2006) (citation omitted). The Sixth Circuit has adopted the

---

[10] The plaintiff is equivocal about whether the defendant's internet presence provides an independent basis for purposeful availment or whether, when taken together with the defendant's participation in the Nashville tradeshow, the two suffice for purposeful availment. (*Compare* Doc. No. 1 ¶¶ 9–10 ("On this basis [the defendant's participation in a trade show] alone, AeroCine is subject to personal jurisdiction in this District. AeroCine has further availed itself of jurisdiction in Tennessee by marketing its infringing products online through its social media profiles and its website . . . which are accessible worldwide, including by residents of this District."), *with* Doc. No. 18 at 14 ("Taken together with Vermeer's other jurisdictional allegations, the fact that AeroCine maintained and published a website . . . is sufficient to constitute purposeful availment." (internal quotation marks and citation omitted)).)

14

interactivity sliding scale approach from *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997). *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 678 (6th Cir. 2005). The *Zippo* court described a "spectrum" of interactivity—at one end of the spectrum are "passive" websites that do "little more than make information available to those who are interested [and do not provide] grounds for the exercise [of] personal jurisdiction." *Zippo Mfg. Co.*, 952 F. Supp. at 1124. At the other end of the spectrum are "highly interactive" websites that allow users to transact business or enter into contracts, in which case jurisdiction often is proper. *Accord Concord Music Grp., Inc. v. Anthropic PBC*, No. 3:23-CV-01092, 2024 WL 3101098, at *8 (M.D. Tenn. June 24, 2024) (Crenshaw, J.) (citing *See, Inc.*, 167 F. App'x at 522). In the middle are "hybrid" or interactive sites that allow users to 'exchange information with the host computer.'" *Imago Eyewear*, 167 F. App'x at 522 (quoting *Zippo*, 952 F. Supp. at 1124). "In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the [website]." *Zippo*, 952 F. Supp. at 1124.

The parties dispute the extent of the defendant's website's interactivity. The defendant describes a "static, passive website" and a "simple, modest LinkedIn Profile Page." (Doc. No. 15-1 at 13, 15.) The plaintiff describes the defendant's website as having "substantial interactive elements." (Doc. No. 18 at 14.) These interactive elements include "links to learn about AeroCine's various product offerings" and the ability to "Book [a] Demo." (*Id.*) But the court need not decide the precise level of interactivity of defendant's internet presence.

"[C]ourts in this Circuit have routinely held that 'the mere maintenance of an interactive, commercial website, accessible from anywhere, without more, cannot constitute purposeful availment." *Concord Music*, 2024 WL 3101098, at *7 (quoting *Cap. Confirmation, Inc. v. Auditconfirmations, LLC*, No. 3:09-0412, 2009 WL 2823613, at *7 (M.D. Tenn. Aug. 28,

15

2009) (collecting cases)). When a defendant's website is implicated in the personal jurisdiction analysis, the Sixth Circuit "look[s] to whether the company's 'website is interactive to a degree that reveals *specifically intended* interaction[s] with residents of the [forum] state.'" *AMB Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151, at *9 (6th Cir. May 8, 2024) (Batchelder, J., dissenting on other grounds) (quoting *Neogen*, 282 F.3d at 890) (emphasis added by *AMB Media*). "[T]he most important factor for purposeful availment is whether forum residents actually ordered products from the defendant, and whether the defendant actually sold products to forum residents through its website." *Noco Co. v. Jasper Indus. Supply, Inc.*, No. 1:22-CV-00851, 2023 WL 8600503, at *4 (N.D. Ohio Dec. 12, 2023) (describing the court's finding in *Zoya Co. v. Julep Nail Parlor Co.*, No. 1:11-CV-1702, 2011 WL 5975054, at *3 (N.D. Ohio Nov. 29, 2011)).

In this case, while the defendant's website is "accessible worldwide" (Doc. No. 1 ¶ 10), there is no allegation that it has ever been visited by anyone from Tennessee. There is no allegation that the defendant's website targeted, advertised to, communicated with, sold or shipped products to, contracted with, or otherwise had any connection to Tennessee or any Tennessean.[11] The court finds that the defendant's internet presence, as alleged, does not support the plaintiff's purposeful availment argument—neither on its own nor in conjunction with the plaintiff's other alleged basis for jurisdiction. Thus, this court does not have personal jurisdiction over the defendant.

---

[11] The only *possible* exception is that the defendant posted an image of, and brief message about, its booth at the Nashville trade show. (Doc. No. 1 ¶ 44.) But unless the viewer knows that the "Quad A Missle [sic] Summit" was in Nashville, the viewer would not know that the image was taken there.

## V. CONCLUSION

For the reasons set forth herein, the Motion to Dismiss will be granted and the claims dismissed without prejudice.

_____
ALETA A. TRAUGER
United States District Judge